RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/24/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DAVID SOLOMON BROWN,<br>Petitioner | CIVIL ACTION<br>Section "P"<br>NO. 1:13-CV-02869 |
| VERSUS | |
| PHILLIP T. MILLER, et al.,<br>Respondent | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by petitioner David Solomon Brown ("Brown") on October 15, 2013 (Doc. 1). Brown is contesting his continued detention by Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security. Brown contends he has been detained by ICE since December 21, 2012 and that he is a native and citizen of the United Kingdom (Doc. 1).

Defendants show, through documentary evidence (Doc. 24, Exs. 2-5) and an affidavit from Brian Gueringer (Doc. 24, Ex. 1), the Assistant Field Office Director of the U.S. Immigration and Customs Enforcement ("ICE") facility at Oakdale, Louisiana, that Brown entered the United States in about May 1980 as a visitor with authorization to remain up to six months. Brown was served with a Notice of Brown's status was adjusted to temporary resident alien on March 13, 1989 (Doc. 24, Ex. 3, p. 3/5; Doc. 25, Ex. 17). Brown alleges in his habeas petition that he never left the United

States, and that he married a United States citizen and had five children with her (Doc. 1). Gueringer further states in his affidavit that, on December 3, 2009, Brown was convicted of conspiracy to commit mail fraud, of wire fraud, and of aiding and abetting wire fraud in the U.S. District Court for the District of Connecticut and sentenced to 36 months imprisonment (Doc. 24, Ex. 1).

Brown's temporary resident status was terminated by the Department of Homeland Security on July 28, 2011 (Doc. 24, Ex. 3, p. 3/5). Gueringer states in his affidavit that, on August 6, 2013, the Department of Homeland Security issued Brown a Notice to Appear, charging him with removability as an aggravated felon, and Brown was placed in removal proceedings (Doc. 24, Ex. 1). Brown was held without bond; a bond hearing was held on December 23, 2013 and Brown requested a change in custody status and a subsequent bond redetermination, which were denied (Doc. 24, Ex. 3). That decision was upheld by the Board of Immigration Appeals (Doc. 24, Ex. 4). Gueringer states in his affidavit that, on February 10, 2014, an immigration judge found Brown is removable, and on February 19, 2014, Brown applied for a cancellation of removal and adjustment of status (Doc. 24, Ex. 1; Doc. 25, Ex. p. 70/94). According to Brown, his case has been continued twice (Doc. 24).

In addition to his application for writ of habeas corpus (Doc. 1), Brown filed a "motion to produce contradictory summary judgment

evidence" (Doc. 25) and a "motion to grant writ of habeas corpus and for release" (Doc. 29). The Respondent opposes Brown's application for writ of habeas corpus (Doc. 24).

Brown raises the following grounds for habeas relief:

1. The Notice to Appear was not issued in a timely manner.

2. Brown's prior "Voluntary Departure" proceedings were administratively closed when ICE filed the Notice to Appear.

3. ICE violated due process constraints on the length of Brown's detention during the pendency of his removal proceeding.

4. The mandatory detention statute was declared unconstitutional for violating due process.

5. Pursuant to the rule of constitutional avoidance, Section 1226(c) does not apply to individuals with substantial claims against removal and does not authorize prolonged detention without a constitutionally adequate hearing.

6. ICE violated the Immigration and Nationality Act when it detained Brown pursuant to the mandatory detention statute although he was not taken into custody by ICE when he released from criminal incarceration for his "removable offense."

7. Brown is entitled to release pursuant to Zadvydas because he ha been detained beyond the presumptively reasonable six month removal period.

<u>Law and Analysis</u>

This court has subject matter jurisdiction over petitioner's challenge to the constitutionality of his detention pending his removal proceedings and final order. See <u>Demore v. Kim</u>, 538 U.S. 510, 517-18, 123 S.Ct. 1708 (2003); <u>Oyelude v. Chertoff</u>, 125 Fed.

3

Appx. 543, 546 (5th Cir. 2005).

Ground 2 - Voluntary Departure

Brown's prior "Voluntary Departure" proceedings were administratively closed when ICE filed the Notice to Appear. Brown contends ICE charged him in error with having failed to comply with the 1988 "voluntary departure" order. Brown contends that he did not violate the April 28, 1988 "voluntary departure" order (Doc. 25, Ex. 13) because he applied for and was granted temporary resident alien status under Section 245A of the Immigration Reform and Control Act of 1986 on March 14, 1989 (Doc. 25, Ex. 12). Brown contends, therefore, that he should not be detained pending his removal hearing.

Early documents from ICE referred to Brown's failure to depart in 1988 and did not reference his 1989 change in status to temporary resident alien. Gueringer's assertions in documentary evidence that Brown failed to comply with the 1988 voluntary removal, the January 29, 2013 "Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g)" which charged Brown with failing to depart in accordance with the 1988 Voluntary Departure (Doc. 25, Ex. pp. 9-10/94), and the March 26, 2013 "Decision to Continue Detention" (Doc. 25, Ex. p. 14/94), seem to be the source of Brown's complaints. However, ICE corrected that error. A 2013 opinion by an Immigration Judge noted that Brown had been granted temporary

resident alien status in 1989, and that status was revoked in 2011[1] (Doc. 1, Ex. pp. 49-50/81), and the Notices to Appear in May, August and October 2013 charged Brown with having committed aggravated felonies, rather than with having failed to depart in 1988.

In any event, Brown is removable due to his prior felony convictions (Doc. 1, Ex. pp. 3/81, 14/81), not because he failed to voluntarily depart in 1988. Therefore, the issue of whether Brown was initially charged in error with failure to depart is irrelevant and this ground for relief is meritless.

Grounds 1 & 6 - Custodial Status and Notice to Appear

Brown argues the Notice to Appear was not issued in a timely manner, and that ICE violated the Immigration and Nationality Act when it detained Brown pursuant to the mandatory detention statute although he was not taken into custody by ICE when he released from criminal incarceration for his "removable offense." Brown contends that the government's documentary evidence contains conflicts as to the date he was released by the Bureau of Prisons and the date he was placed in ICE custody. Brown contends he actually remained in BOP custody from June 14, 2013 (the date Brown completed his sentence) to December 12, 2013. The government shows that Brown completed his sentence and was released from the BOP in December 2012 (Doc. 25, Ex. 17).

---

[1] That order is not in the record before this court.

5

The fact that Brown was not physically released from BOP custody is not relevant. In December 2012, Brown was placed on supervised release and released into the custody of the U.S. Immigration and Customs Enforcement ("ICE"), pursuant to a detainer (Doc. 25, pp. 82-83/94), for removal proceedings as a result of his convictions. Therefore, when Brown's term of supervised release began, he was released into ICE's custody. Brown v. USA, 1:12-cv-00965 (D.Conn. December 19, 2013), appeal den., No. 14-229 (2d Cir. March 7, 2014)(Section 2255 proceeding). Brown was no longer serving a federal sentence of imprisonment, but was transferred to the LaSalle Detention facility on December 26, 2012 under custody of ICE, then transferred to the Federal Detention Center in Oakdale, Louisiana on June 6, 2013 (Doc. 25, Ex. 21, pp. 84/94-86/94, 93/94). There is also a document from the GEO Group, the operator of the LaSalle Parish Detention Center, that appears to show Brown was released from the LaSalle Detention Facility to the Federal Detention Center on January 10, 2013 (Doc. 25, Ex. 21, p. 87/94). Additional documents from the GEO Group show Brown was in the LaSalle Detention Facility on June 13-14, 2013 and on August 12, 2013 (Doc. 25, Ex. pp. 93-94/94). Brown admits in his brief (Doc. 25, p. 5) that he was transferred back from the Federal Detention Center to the LaSalle Detention Facility on June 14, 2013 because he went on a hunger strike at the Federal Detention Center; Brown contends he remained at the LaSalle Detention Facility for

over six months before he was returned to the Federal Detention Center.[2]

Regardless of the exact date on which Brown went to the Federal Detention Center in Oakdale, Brown was placed in ICE custody when he was placed on supervised release for his federal criminal sentence. The location of the facility in which Brown was detained while he was in ICE custody is irrelevant to the fact that he was actually in ICE custody; ICE contracts with many state, federal and private detention facilities for their services in detaining those over whom ICE has custody.

Moreover, as recently held by the Third Circuit in <u>Sylvain v. Attorney General of U.S.</u>, 714 F.3d 150, 161 (3d Cir. 2013), even if the statute calls for detention "when the alien is released," and even if "when" implies a short time frame, nothing in the statute suggests that officials lose authority if they delay. Also, <u>Gonzalez-Ramirez v. Sec. of U.S. Dept. of Homeland Sec.</u>, 529 Fed.Appx. 177, 179 (3d Cir. 2013), cert. den., __U.S.__, 134 S.Ct.

---

[2] Brown contends he was "serving time" at LaSalle Detention Facility and was doing additional "federal time" at the Federal Detention Center. However, the location where Brown is detained does not define the reason for, or nature of, his confinement. After December 21, 2012, Brown was not "doing time" of any kind. Instead, he was being detained while awaiting his removal proceedings, regardless of whether he being detained in the Federal Detention Center or in the LaSalle Detention Facility. Born's detention was required by statute, 8 U.S.C. § 1226(c), and guaranteed his appearance at his removal proceedings as well as preventing him from committing any further criminal offenses. See <u>Demore</u>, 538 U.S. at 519-520, 123 S.CT. at 1715-1716.

956 (U.S. 2014).

The undersigned accepts, in accordance with the documentary evidence, that Brown was placed in ICE custody on December 21, 2012. The point of Brown's strenuous arguments as to the date he was placed in ICE custody appears to be that he did not receive a Notice to Appear (with the charges against him) for a year after he was placed in ICE custody.

On May 31, 2013, August 5, 2013, and October 13, 2013, Notices to Appear charged Brown with having committed crimes of moral turpitude or aggravated felonies (Doc. 1, Exs. 1A, 1B, 1C, 1D, 1E, pp. 2-6, 8-9, 14-15, 17-19, 25-27). Therefore, it appears that Brown was served with a Notice to Appear about five months after he was placed in ICE custody on December 21, 2012, not over a year as Brown alleges. Brown has not cited any authority which places a time limit on when ICE must serve a detained alien with a Notice to Appear, and the undersigned has not found any. The only time limit appears to be that of reasonableness for the overall time it takes for ICE to conduct the removal proceedings, not the amount of time at any particular stage of those proceedings, as discussed below.

Brown's second argument is that the initial Notices to Appear did not charge him with a "removable offense," but instead charged him with failure to comply with the Voluntary Departure in 1988. However, as discussed above, the Notices to Appear charge Brown with removable offenses (the crimes for which he was convicted).

8

Brown's removal proceedings are not based on the 1988 removal order.

Brown also argues that the May 31, 2013 Notice to Appear was not timely and that, since the Notice to Appear was issued late, he should not be detained pending his removal hearing. Since, as already established, a five-month delay in the Notice to Appear was reasonable under the circumstances of the error by ICE as to the history of Brown's status and the true reason for his removal proceedings now. Instead of a Notice to Appear, Brown received a January 29, 2013 "Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g)," which charged Brown with failing to depart in accordance with the 1988 Voluntary Departure (Doc. 25, Ex. pp. 9-10/94). That was sufficient to support Brown's pre-removal-hearing detention.

Therefore, these grounds for relief are meritless.

Grounds 3 & 5 - Section 1226(c) Detention

Next, Brown argues that ICE violated due process constraints on the length of Brown's detention during the pendency of his removal proceedings.[3] Brown also argues that, pursuant to the rule of constitutional avoidance,[4] Section 1226(c) does not apply to

---

[3] Brown also raises complaints as to his conditions of confinement, which are not properly raised in a habeas petition. Brown must file a civil rights complaint to assert his conditions of confinement claims.

[4] The "rule of constitutional avoidance" referred to by Brown is that the courts should not rule on questions of constitutionality unless such adjudication is unavoidable. Spector Motor Service v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct.

individuals with substantial claims against removal and does not authorize prolonged detention without a timely bond hearing.

First, Brown contends he is not subject to mandatory detention pursuant to Section 1226(c) because his first notice to appear was not issued for five and one-half months after he was detained, in violation of his right to due process. Brown has not cited any authority for the premise that a five and one-half month delay in receiving his notice to appeal (written notice of the charges against him) violates due process or relieves him from the mandates of Section 1226(c), and the undersigned has not found any.

Congress, justifiably concerned that removable criminal aliens who were not detained would continue to engage in crime and would fail to appear for their removal hearings in large numbers, found that such aliens could be detained for the brief period necessary for their removal proceedings without providing for individualized determinations as to whether aliens presented flight risk. Demore v. Kim, 538 U.S. at 513, 123 S.Ct. at 1712. Detention during removal proceedings is a constitutionally permissible part of that process. Demore, 538 U.S. at 531, 123 S.Ct. at 1721-1722. In Demore, the Supreme Court held that mandatory detention of criminal aliens (including lawful permanent resident aliens) during removal proceedings pursuant to 8 U.S.C. § 1226(c) is constitutionally valid even where there has been no individualized finding that the

---

152, 154 (1944).

alien is unlikely to appear for his deportation hearing. Also, <u>Wong Wing v. U.S.</u>, 163 U.S. 228, 235, 16 S.Ct. 977, 980 (1896); <u>Oyelude v. Chertoff</u>, 125 Fed.Appx. 542, 547 (5th Cir. 2005).

In the case at bar, Brown has had an individualized bond hearing which resulted in his continued detention. Brown has also had several reviews which resulted in his continued detention. Therefore, Brown has not shown that his detention by ICE, during the pendency of his removal proceedings, violated due process.

Brown also complains that ICE did not hold his bond hearing for a year after he was taken into custody. Although that may be true, Brown cannot show prejudice arising from the length of time, since he was ultimately denied bond and has remained in detention status.

Brown contends that he was initially detained pursuant to the 1988 removal order, which was no longer valid, rather than with a removable offense. Although it is true that a January 29, 2013 "Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g)" charged Brown with failing to depart in accordance with the 1988 Voluntary Departure (Doc. 25, Ex. pp. 9-10/94), and that error was continued in a March 26, 2013 "Decision to Continue Detention" (Doc. 25, Ex. p. 14/94), that error was obviously corrected at least as early as the May 31, 2013 Notice to Appear. Brown contends that, nevertheless, he was illegally detained by ICE from December 21, 2013 until the charges were corrected. Since Brown would have been

11

detained by ICE even if the correct charge had been set forth, pursuant to the mandatory detention provision of 8 U.S.C. § 1226(c), Brown cannot show prejudice arising from the error in the charge.

Brown also contends he should not be detained due to his "substantial claims" against removal.[5] However, since Brown is being detained pursuant to the mandatory detention provisions of Section 1226(c), his "fitness for bail" is not at issue, nor does the court have jurisdiction to review the bond determination, under Section 1226(e).

This ground for relief is meritless.

Ground 4 - Mandatory Detention

Brown contends he is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).

Brown was convicted in federal court in Pennsylvania of mail fraud, of wire fraud, and of aiding and abetting wire fraud, and was sentenced to a total of three years imprisonment. Brown's convictions caused him to be deportable pursuant to 8 U.S.C. § 1227(a), which provides in pertinent part:

---

[5] In the context of bail petitions by immigration detainees seeking relief in federal habeas corpus proceedings, a court considering a habeas petitioner's fitness for bail must inquire into whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. See Mapp v. Reno, 241 F.3d 221, 230 (2d Cir. 2001). Also, Bolante v. Keisler, 506 F.3d 618 (7th Cir. 2007) (disagreeing with Mapp).

```
(a) Classes of deportable aliens:
Any alien (including an alien crewman) in and admitted to the
United States shall, upon the order of the Attorney General,
be removed if the alien is within one or more of the following
classes of deportable aliens:
                    *         *         *
(2) Criminal offenses
   (A) General Crimes
                    *         *         *
      (iii) Aggravated felony
      Any alien who is convicted of an aggravated
      felony at any time after admission is
      deportable.
```

The term "aggravated felony" includes an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. 8 U.S.C. § 1101(a)(43)(M)(I). Therefore, wire fraud and mail fraud are aggravated felonies within the meaning of the Immigration and Nationality Act. The Immigration Judge determined that the Connecticut federal court found the loss in Brown's criminal case involved about $2.1 million and ordered him detained (Doc. 24, Ex. 3, p. 5/5), and the Board of Immigration Appeals affirmed those findings and the order (Doc. 24, Ex. 4). Accordingly, Brown is deportable pursuant to 8 U.S.C. § 1227, and is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B).

Brown argues he should be released because ICE failed to take him into custody when he was released by the Bureau of Prisons. However, as discussed above, Brown was in fact detained by ICE immediately upon his release by the Bureau of Prisons on his criminal convictions. Moreover, Section 1226(e) provides that

"[n]o court may set aside any action or decision by the Attorney General under [Section 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Therefore, this court does not have jurisdiction to review the administrative decision denying Brown's request for bond and to detain him pending a final decision on whether Brown will be removed.

Section 1226 expressly provides for mandatory detention during removal proceedings of criminal aliens who are removable on account of their commission of certain enumerated offenses, including aggravated felonies. Although Section 1226(c)(2) provides for release of criminal aliens by the Attorney General under certain circumstances (related to witness protection), those circumstances are not present in this case. Once removal proceedings terminate in an order of removal, the alien's detention is governed by 8 U.S.C. § 1231(a).

Congress, justifiably concerned that removable criminal aliens who were not detained would continue to engage in crime and would fail to appear for their removal hearings in large numbers, found that criminal aliens could be detained for the brief period necessary for their removal proceedings without providing for individualized determinations as to whether aliens presented flight risk. Demore v. Kim, 538 U.S. at 513, 123 S.Ct. at 1712. In Demore v. Kim, the Supreme Court held that mandatory detention of

criminal aliens (including lawful permanent resident aliens) during removal proceedings under 8 U.S.C. § 1226(c) is constitutionally valid even where there has been no individualized finding that the alien is unlikely to appear for his deportation hearing.

Some courts have held that mandatory detention under Section 1226(c) can be unreasonably long, entitling the detainee to a detention hearing and possible release.  The court in <u>Diop</u>, 656 F.3d 221, 233 (3d Cir. 2011), held (consistent with Justice Kennedy's concurrence in <u>Demore v. Kim</u>) that Section 1226(c) is unconstitutional when it is applied to detain someone for an unreasonable length of time *without further individualized inquiry into whether detention is necessary* to carry out the purposes of the statute.  When detention during the pendency of removal proceedings becomes unreasonably long, the court may step in pursuant to 28 U.S.C. § 2241 and order ICE/DHS to show cause for the lengthy detention and make a determination as to whether the length of the detention is unreasonable.  See <u>Diop</u>, 656 F.3d at 233-234 (thirty-five month detention pursuant to Section 1226(c) during the pendency of removal proceedings is unreasonable).  Also, <u>Leslie v. Attorney General</u>, 678 F.3d 265 (3d Cir. 2012)(four year "pre-removal" detention was unreasonable, noting that part of the four year delay was due to Leslie's successful appeals); <u>Wilson</u>, 2010 wl 456777, *6-*7 (pre-removal-order detention pursuant to Section 1226(c) for over four years was not unreasonable since the

15

delay was primarily due to petitioner's dilatory tactics); Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005)(two year and eight month pre-removal-order detention pursuant to Section 1226(c) was unreasonable); Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003)(the government may detain prima facie removable criminal aliens, without bond, for a reasonable period of time required to initiate and conclude removal proceedings promptly). There may be a point at which continued detention becomes unreasonable and the implementation os Section 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community. Diop, 656 F.3d at 232-233. Also, Garcia v. Lacy, 2013 wl 3805730 (S.D.Tex. 2013).

On the other hand, other district courts have relied on 8 U.S.C. § 1252(b)(9) to find no jurisdiction to consider a challenge to the applicability of the mandatory pre-removal detention provisions of Section 1226(c) until the final order of removal is entered because the mandatory detention issue arises from the proceeding brought to remove the alien. At that point, jurisdiction lies in the appropriate court of appeal. See Flores-Powell v. Chadbourne, 677 F.Supp.2d 455, 464-466 (D.Mass. 2010); Kapiamba v. Gonzales, 2009 wl 1406648 (W.D.Mich. 2009). In Kambo v. Poppell, 2007 wl 3051601 (W.D.Tex. 2007), quoting Loa-Herrera v.

Trominski, 231 F.3d 984 (5th Cir. 2000), the district court found that it did not have jurisdiction to review the decision to deny release on bond or the Attorney General's discretionary judgment regarding the application of 1226(a), "including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints." Also, Malm v. Holder, 2012 wl 2568172 (S.D.Tex. 2012).

There are no rulings from the Fifth Circuit on this issue. However, assuming this court has jurisdiction to review the continued detention of Brown during the pendency of his removal proceedings, the government has protected Brown's right to due process by affording him a bond hearing in January 2013, in compliance with the Third Circuit's opinion in Diop. At that hearing, the Immigration Judge determined that Section 1226(c) mandates Brown's detention as a criminal alien who has committed aggravated felonies (Doc. 24, Ex. 3), and the Board of Immigration Appeals affirmed that holding (Doc. 24, Ex. 4).

Therefore, Brown has not shown that his right to due process has been violated or that his continued detention during the pendency of his rather lengthy removal proceedings is unreasonable.

This issue is meritless.

Ground 7 - Zadvydas Relief

Brown filed a "motion for writ of habeas corpus" (Doc. 29) in

which he asks to be released from detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491 (2001).

In response to Brown's motion, the Respondent argues that, because Brown applied for withholding of removal and adjustment of status, his removal order is not final (Doc. 32). Therefore, he cannot yet rely on <u>Zadvydas</u> for release pending removal.

The Respondent is correct. <u>Zadvydas</u> applies only to release from detention following a final order of removal.[6]

Since a removal order has not yet been entered in Brown's case, there is no final order of removal and <u>Zadvydas</u> is inapplicable to Brown at this time. This ground for relief is meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Brown's Section 2241 habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

---

[6] "An order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, ... shall become final upon dismissal of an appeal by the Board of Immigration Appeals ...; or, ... it shall be final as of the date of the Board's decision." <u>Thapa v. Gonzales</u>, 460 F.3d 323, 333 (2d Cir. 2006)(declining to uphold 8 U.S.C. § 1101(a)47)(B).

after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases (and other habeas cases pursuant to see Rule 1(b)) in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability**

should issue. *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the ___ day of July 2014.

```
                    _____
                         JAMES D. KIRK
                    UNITED STATES MAGISTRATE JUDGE
```